EASTERN DIST.
*June,* 1836.

CLAPIER ET AL.
*vs.*
BANKS.

A purchaser of stocks at auction, when there is no deception, takes them subject to all the requirements of the charter of the institution from which they emanate.

---

### CLAPIER ET AL. *vs.* BANKS.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The same exactness is not to be expected, and will not be required, in the execution and preservation of the records of marriages, births and deaths, in a new colony, as is observed and required in the mother country.

The destruction by fire of the places of deposit of records and documents, dispenses with the production of the originals, which may be fairly supposed to have been destroyed.

Legitimacy will be presumed, when a century has elapsed without its being doubted or controverted.

This is a petitory action, in which the plaintiffs, residing
in France and claiming as heirs of the late Pierre Augustin Meuillon, his succession, which was opened in the parish of
St. Charles about the year 1810, now seek to recover a house and lot in the possession of the defendant, situated at the corner of Bienville and Levee streets, in New-Orleans, which they allege forms a part of Meuillon's succession.

The defendant sets up title to the property in question, by purchase from the late Pierre St. Amand, by public act dated the 8th of May, 1815, for the price and sum of fourteen thousand dollars, with a general warranty of title. He calls the natural children of St. Amand, who succeeded to his estate, in warranty.

Upon these issues, the parties went to trial.

The facts and evidence of the case are given with great minuteness and accuracy, in the reasons for the judgment rendered by the district judge, which serve as a statement of the case. They are as follow :

" To advert to the events pertinent to the case in the order of time, we begin by stating, that, as is alleged, Jean François Daspic St. Amand intermarried with Marie Françoise Dubuisson, at New-Orleans, in 1722. It will be found that the controversy turns on the proof of this marriage. The fruit of this alleged marriage were Pierre St. Amand, born in 1725, and Dominic St. Amand, born in 1728.

" Jean François Daspic St. Amand died in 1729. Antoine Meuillon emigrated from Grenoble, in France, and in 1732 married Marie Françoise Dubuisson, widow of Daspic St. Amand.

" Marie Françoise Dubuisson died in 1738; Antoine Meuillon died in 1767.

" The fruit of their marriage was Louis Augustin Meuillon, born at Pointe Coupée, in 1733, and who died in 1810, without leaving issue.

" The litigation is in relation to his succession. At the time of the decease of Louis Augustin Meuillon, in 1810, his

EASTERN DIST.
June, 1836.

CLAPIER ET AL.
vs.
BANKS.

uterine brothers Pierre and Dominic St. Amand were both deceased ; but they had left children, nephews of Louis Augustin Meuillon.

"The petitioners claim the succession of Louis Augustin Meuillon, alleging themselves to be his nearest relations, in 1810, the time of his decease.

"The children of Pierre and Dominic St. Amand, as the nephews and heirs of Louis Augustin Meuillon, on his decease, in 1810, took possession of his estate and had it sold. By successive conveyances, the property sued for came to the defendant, Banks; and by successive calls in warranty, the legal and instituted heirs of Pierre and Dominic St. Amand are made the final defendants.

"The original petition claimed for plaintiffs only as legal heirs. An amended petition claimed for them as instituted heirs under a will, alleged to have been destroyed by defendants' ancestors. As the court was of opinion that plaintiffs cannnot claim under a will without producing a probate of the will, all evidence under this allegation was excluded, and plaintiffs were driven to rest on their character as legal heirs only.

"The plaintiffs having alleged and proved themselves related to Louis Augustin Meuillon (and they are only one degree more remote than the children of Pierre and Dominic St. Amand,) claim to be heirs of said Meuillon, and it became incumbant on the descendants of these persons, not only to show lineal descent from them, which has been done, but also, that Pierre and Dominic St. Amand were legitimate descendants of Marie Françoise Dubuisson ; and, therefore, lawful uterine or maternal brothers of Louis Augustine Meuillon.

"This they have attempted to do, by all the different modes of evidence applicable to the fact :

"1. By parole evidence, proving themselves and their ancestors always in possession of the legal quality and condition of legitimate lineal descendants of Marie Françoise Dubuisson, by her first husband, Daspic St. Amand.

" 2. By the recognition of them as such, by Louis Augustin Meuillon, and by their being treated and considered as such by the community.

" 3. By the private writings, notarial acts, &c., in which both Antoine Meuillon and Louis Augustin Meuillon recognized and treated with them as such. Antoine Meuillon divides the succession of their mother between them and his own child, Louis Augustin Meuillon, and acquits himself towards them as their tutor, both in relation to their father's and mother's successions.

" 4. By the act of marriage between Antoine Meuillon and Marie Françoise Dubuisson, in which she is described as the widow of Daspic St. Amand.

" The evidence on these heads of proof, is of the most plenary description, and carries the most perfect conviction to the mind, of the facts sought to be established by the defendants. But the defendants have further,

" 5. Introduced an act of the marriage between Jean François Daspic St. Amand and Marie Françoise Dubuisson, which took place, as has been stated, in 1722.

" ' First register of marriages of the parish church of St. Louis, of New-Orleans, containing three hundred and seventy-six acts of marriages of whites and eleven marriages of negroes, and three acts of abjuration of heresy. The said register begins the first day of the month of July, of the year 1720, and finishes the fourth day of the month of December, of the year 1730.'

" The book is obviously not a collection of original acts, but copies of them, and extracts from them. At the close of the book is a certificate in Spanish, as follows :

" ' I, Francis Antonio de Sedella, religious, capuchin, curate of this church of St. Louis of New-Orleans, certify in the form (que puedo) I have a right to do, that this present register, which contains three hundred and ninety acts of marriage, which were copied and extracted in the time of the government of France over this province, to which full credit and faith should be given ; that the original register which

EASTERN DIST. *June*, 1836.

CLAPIER ET AL. *vs.* BANKS.

contained them, from which they were copied, was found in a bad state, as were also the conditions of the other registers of this church, caused by the devouring fire, which took place in this capital on 21st March, 1788, and that this may appear, I attest.

Signed,　　FR. ANTONIO DE SEDELLA, Curate.'

" The act of marriage is as follows :

" ' No. 119, fol. 40. Jean François de St. Amand, with Marie Françoise Dubuisson.

" ' In the year 1722, 13th April, I, the undersigned, curate of New-Orleans, have received the mutual consent of marriage of Jean François St. Amand Daspic, son of Jacques Daspic, and of Dominique Bordelière, his father and mother, and of Marie Françoise Dubuisson, daughter of Leon Dubuisson and of Mariane Canop, her father and mother, in presence of Pierre Dreux, of Martharine Dreux, of Pierre Alexis Desjardins, of François Quasido, and of Claude Pierre Hyronée, who have signed ; with me also signed St. Amand Dreux, M. Dreux, and J. Richard, curate.'

" This act of marriage is attacked as not being in conformity with the ordonnance of 1667 on this subject, made in France, which requires the act of marriage to be signed by the parties, by at least four witnesses, or a declaration that they know not how to sign.

" That the act does not express that the banns were published.

" That the nuptial benediction is not stated to have been given.

" That it does not appear that the curate was the local curate of New-Orleans.

" That it is not stated that the marriage was celebrated ; only that a consent to marry was given.

" That it is not stated that the marriage was in the face of the church.

. " There appears much boldness in the attempt to have a marriage declared null, which was made one hundred and

thirteen years ago, and the descendants from which have ever since been in the undisputed possession of the quality, character and condition of lineal legitimate descendants of the married persons, and who were acknowledged, treated with, and recognized as legitimate, by the only persons who had an interest to make the question.

" One of the counsel of the plaintiffs adverted to a principle of law, that when a plaintiff in a petitory action makes out a *primâ facie* title or case, the burden of proof is thrown on the defendant to show a better title. This position is true, but it is also true, that when the defendant has in turn shown a *primâ facie* good title in himself, the burden of proof is shifted back on the plaintiff, to rebut and destroy it.

" The counsel admitted the truth of this position so far as to say, that if defendants had rested on their proof by witnesses, private writings and notarial acts, they would fully have established their lineal legitimacy as descendants of Marie Françoise Dubuisson, but that the production of the act of marriage, defective in essential forms, had paralized the other proofs.

" In relation to this part of the subject, I concur in the application by defendant's counsel, of the principle, that the laws of a mother country when applied to her colonies, are always to be modified to the situation, wants and circumstances of the colony. This register is described as the first register of marriages. It is to be presumed there were marriages before 1720 ; and even if it were proved they were made before a commandant for want of a *curé*, or of any other public officer, as among the Anglo-American population justices of the peace presided at marriages for want of a clergyman, the necessity of the case would make the law of it.

" In Pizero *vs.* Meuillon, for the name of Meuillon figures once before in an interesting case in our books, the court declared, that the passing of acts before commandants was binding, and the law of the colony, because there were no notaries, and it was the practice. So, it has been decided, that an order to admit a will to probate, implied an order to

9

execute the will. Authorities could be cumulated without number on analagous questions, according to which it has been held, that great allowance for ignorance, unskillfulness or peculiar circumstances of a colony, is to be made, and the law applied as it was then understood and practised. It is the common law of colonies.

"These principles repel many, if not all the objections and exceptions to this act of marriage, if they were ever so clearly established. On examination, it will be found that the acts of marriage in the register produced, are recorded in different forms, by different individuals. If the case were much more modern, and the proof much more defective than it is, the certificate of the condition in which the records were, when copied, would give the court ample room for presumption, and the court would presume a great deal in favor of a quality and condition of married persons, recognized as such by all the connections ; and it appears to me, a court is bound to presume any thing and every thing in support of a civil condition and quality of one hundred years' standing in Louisiana, which has been hitherto unimpeached.

"It will presume every thing that is necessary to make this *extract*, for it is so styled, to be an extract from an original, complete in all respects.

"As was observed by a counsel for defendants, if the evidence in this case does not establish the civil condition of this family, the inhabitants of Louisiana of French descent may as well at once surrender their estates to the descendants of their common ancestors in France.

"I consider, that the quality and condition of the children of Pierre and Dominic St. Amand, as heirs of Louis Augustin Meuillon, in 1810, is fully established."

Judgment was rendered in favor of the defendant, from which the plaintiffs appealed.

*Fourchy, Magnin* and *Caillard,* for the plaintiffs.

*Morphy, Mazureau, Pichot* and *Conrad,* for the defendants and warrantors.

*Martin, J.,* delivered the opinion of the court.

This is an action by the heirs and legal representatives of the late Louis Augustin Meuillon, who is alleged to have died in this state in the year 1810, against the defendant, as possessor of a lot of ground, which the plaintiffs allege to be part of the estate of their said ancestor, and which legally belongs to them by inheritance.

EASTERN DIST.
June, 1836.

CLAPIER ET AL.
vs.
BANKS.

The defendant sets up title to the lot in question, as purchaser from the late Pierre St. Amand, of New-Orleans, the 8th of May, 1815, as appears by his deed of sale of that date, for the price and sum of fourteen thousand dollars, with full warranty of title.

The success of the plaintiffs depends on establishing the illegality of the marriage of St. Amand, the ancestor. For this purpose, they rely on the absence of any documentary evidence of his marriage with Marie Françoise Dubuisson, who after St. Amand's death married Antoine Meuillon, in respect of whom the plaintiffs claim as collateral heirs.

On the other hand, it has been shown, that in the conflagration which desolated a considerable portion of the city of New-Orleans, in the year 1788, the records of the parish became for a considerable part the prey of the flames; that those which were saved, were very much injured and defaced, so much so, that it became necessary to have them transcribed into new books procured for that purpose.

Among the records thus rescued from the flames, is a document purporting to be a record of marriage, bearing date in the year 1722, in which the curate of New-Orleans attests and declares he has received the mutual consent of marriage of Jean François St. Amand, &c., and of Marie Françoise Dubuisson, &c., in the presence of witnesses. These are the parents of St. Amand, the vendor of the defendant.

During the century which preceded the present suit, the heirs of St. Amand have been reputed the legitimate descendants of the common mother of St. Amand, and of the children by her second marriage with P. A. Meuillon.

On these facts and proofs, the district judge who tried the cause recognized the legality of the marriage of the parents

*The same exactness is not to be expected, and will not be required in the execution and preservation of the records of marriages, births and*

EASTERN DIST. of St. Amand, who sold the disputed premises to the defend-
June, 1836. ant, and consequently established the defendant's title. From
this judgment the plaintiffs appealed.

On a careful examination of the evidence and law of the
case, this court is of opinion the district judge decided
correctly. In the infancy of a colony it but rarely happens,
that the laws of the mother country, which are enacted to
secure the evidence of marriages, births and deaths, are
executed and carried into effect, with the regularity and
exactness they would be in the mother country itself.

The destruction by fire of the places of deposit of records
and documents, dispenses with the production of the original
records and documents themselves, which may fairly be
supposed to have been destroyed; and legitimacy will be
presumed when a century has elapsed, without its being
doubted, controverted or denied.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the District Court be affirmed, with costs.

*Margin notes:* deaths, in a new colony, as is observed and required in the mother country. The destruction by fire of the places of deposit of records and documents, dispenses with the production of the originals, which may be fairly supposed to have been destroyed. Legitimacy will be presumed, when a century has elapsed, without its being doubted or controverted.

