McINNIS, Judge.
Prior to November 27, 1886 Gus Wesley was born to Mariah Dixy, who was not married to anyone, and the record contains no evidence as to his father, so his father is unknown. On December 3, 1886 Mariah Dixy married Silas Rose, and to this union two children were born, Esther and Lu-venia. Esther died without issue. September 13, 1925 Gus Wesley married Della Cotton. Gus Wesley died February 7, 1950, leaving a small community estate consisting of personal property and Lot 20 of Wood-lawn Subdivision of Shreveport, and improvements, his separate property. He is survived by his widow, Della, and Luvenia Jackson, a blood half sister.
The succession was opened June 1, 1950 by the filing of an application by Della Wesley, the widow, to be appointed admin-istratrix of the succession, and Mr. Paul Mayer was appointed attorney to represent the absent heirs.
Luvenia Jackson employed another attorney, Air. Robert G. Chandler to represent her, and on June 28, 1950 filed opposition to the appointment of Della Wesley, and alleging that she is the sister and sole heir of Gus Wesley, asks that she be appointed administratrix. July 19, 1950 Luvenia Jackson filed a petition alleging that no administration of the succession is necessary and that she is the sole heir of Gus Wesley and entitled to be sent into possession of the property left by decedent. In the alternative, if the court should decide that an administration is necessary that she be appointed. A rule to show cause was issued to Della Wesley, J. H. Flournoy, Sheriff, and Mr. Paul Mayer, attorney for absent heirs. The rule was fixed for trial July 26, 1950 but was continued to August 1, 1950, and on that date Della Wesley filed a-plea of vagueness, an exception of no cause and no right of action and an answer.
After trial of the rule the lower court rendered judgment in favor of Della Wesley and ordered her appointed administra-trix. Motion for rehearing was filed and overruled and the decree signed August 15, 1950 became final in the district court August 31, 1950. On August 16, 1950 Della Wesley filed a petition alleging that she is the sole heir of her deceased husband, Gus Wesley, and that she accepts the succession purely, simply and unconditionally, and prays that she be placed in possession of all the property, and judgment as prayed for was signed August 16, 1950.
From the two judgments Luvenia Jackson took a devolutive appeal to the Plonorable Supreme Court, which Court, for lack of appellate jurisdiction, transferred the appeal to this court. 222 La. 411, 62 So.2d 625.
*471 The sole question presented is whether or not the half sister of deceased, Luvenia Jackson, inherits the separate estate, or whether the widow inherits it.
The record discloses that Mariah Dixy Rose acknowledged Gus Wesley as her child and reared him in the home with her other children, born of her marriage to Silas Rose.
Articles of the LSA-Civil Code that appear applicable to the question presented are: 202, 206, 212, 238, 917, 923 and 924, reading as follows:
Art. 202. “Illegitimate children who have been acknowledged by their father, are called natural children; those who have not been acknowledged by their father, or whose father and mother were incapable of contracting marriage at the time of conception, or whose father is unknown, are contra-distinguished by the appellation of bastards.” (Emphasis ours.)
Art. 206. “Illegitimate children though duly acknowledged, can not claim the rights of legitimate children. The rights of natural children are regulated under the title: Of Successions.”
Art. 212. “Illegitimate children of every description may make proof of their maternal descent, provided the mother be not a married woman. But the child who will make such proof shall be bound to show that he is iden- • tically the same person as the child whom the mother brought forth.”
Art. 238. “Illegitimate children generally speaking, 'belong to no family, and have no relations; accordingly they are not submitted to the paternal authority, even when they have been legally acknowledged.”
Art. 917. “When the deceased has left neither lawful descendants, nor lawful ascendants, nor collateral relations, the law calls to his inheritance either the surviving husband or wife, or his or her natural children, or the State, in the manner and order hereafter directed.” ■
Art. 923. “If the father and mother of the natural child died before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants.”
Art. 924. “If a married man has left no lawful descendants nor ascendants, nor any collateral relations, but a surviving wife not separated from bed and board from him, the wife shall inherit from him to the exclusion of any natural child or children duly acknowledged.
“If, on the contrary, it is the wife who died without leaving any lawful descendants, ascendants, or collateral relations, her surviving husband not separated from bed and board from her, shall not inherit from her, except in case she should leave no natural child or children by her duly acknowledged.”
These articles of the LSA-Civil Code have been interpreted by our appellate courts, and these interpretations are adverse to the claim of Luvenia Jackson to the separate property left iby Gus Wesley at his death, Victor v. Tagiasco, 6 La. 642; Succession of Ducloslange, 2 La.Ann. 98; Succession of Fletcher, 11 La.Ann. 59; In re Nereaux’s Estate, 112 La. 572, 36 So. 594; Delpit v. Canal Bank & Trust Co., 143 La. 298, 78 So. 565; Rowe v. Succession of Blackburn, 152 La. 704, 94, So. 325; Montegut v. Bacus, 42 La.Ann. 158, 7 So. 449; Succession of Young, 166 La. 285, 117 So. 150; Felix v. Bruce, 14 Orleans App. 64; Succession of Falls, 4 La.App. 10; Wilson v. Rogers, La.App., 14 So.2d 650.
In the case of Nereaux’s Succession, supra, the facts were identical with the facts in the instant case. There it was a legitimate half brother claiming the estate of his illegitimate half brother in opposition to the wife. Here it is a legitimate half sister claiming the estate of her illegitimate half brother.
This case has been cited with approval in Delpit v. Canal Bank & Trust Co., supra, Rowe v. Succession of Blackburn, supra, Succession of Young, supra, and Felix v. Bruce, supra.
The opponent, Luvenia Jackson, relies largely on Article 238 of the LSA-Civil Code, especially because it says “Illegiti *472 mate children generally speaking, belong to no family, and have no relations; * * (Emphasis ours.)
It is argued that “generally speaking” has some significance that has not heretofore been given any consideration by the courts, and that an exception should be made in this case, because Luvenia Jackson is a legitimate child. Complaint is also' made, because the code and cases hold that the mother alone may acknowledge an illegiH-mate child, and it is admitted that Gus Wesley was informally acknowledged by his mother. There is nothing in this record to show who was the father of Gus Wesley, and counsel for Luvenia Jackson says in brief that his father is unknown. Art. 202 LSA-C.C. denominates such children as bastards.
In a discussion of Art. 238 LSA-C.C. in the case of Thompson v. Vestal Lumber & Manufacturing Co., 208 La. 83, 22 So.2d 842, 854, a workmen’s compensation case, Mr. Chief Justice O’Niell (on rehearing), had this to say:
“In the instant case the defendant relies in some measure upon article 238 of the Civil Code, which provides: ‘Illegitimate children, generally speaking, belong to no family, and have no relations; accordingly they are not submitted to the paternal authority, even when they have been legally acknowledged.’
“So far as this article of the Code deals with paternal authority, it has’ no connection' with the provisions of subsection 2 of section 8 of the Employers’ Liability Act, dealing with dependent illegitimate children. We say this because in the article of the Code no distinction is made between illegitimate children who have been legally acknowledged and those who have not been legally acknowledged, with regard to their being free from paternal authority. It is said there that illegitimate children, even when they have been legally acknowledged, ‘are not submitted to the paternal authority.’, The word ‘submitted’ is obviously not an appropriate translation of the word soumis in the French text of the corresponding article, 254, in the Code of 1825 — or in article 59, p. 57, of the Code or Digest of 1808. The French word soumis is the past participle of the verb soumettre, and means — according to the context in which it is used — ‘subject’ or ‘subjected’, or ‘submitted.’ But, in the context in which it appears in’ article 254 of the Code of 1825, the word soumis means ‘subject’ or ‘subjected.’ It does not mean ‘submitted.’ The text of article 254 i eads as follows: ‘Les batards, en general, ne sont d’aucune famille et n’ont point de parens; aussi ne sont-ils pas soumis a la puisance paternelle, meme lorsqu’ils sont legalement reconnus/
“A more accurate translation of article 254 of the Code of 1825, giving to each word the meaning ascribed to it by Spieres & Surrenne, would read like this: ‘Bastards, generally, do not belong to any family and have no relations; likewise they are not subject to the paternal authority, even when they have been legally acknowledged.’
“The term en general means ‘in general,’ or ‘generally,’ but it means also ‘as a general rule,’ as distinguished from an invariable rule. See p. 801 of Spieres and Surrenne’s Dictionary. Our opinion is that when the writers of article 254 of the Code of 1825 wrote ‘Bastards, generally, do not belong to any family and have no relations,’ they meant that a bastard is not considered a member of any particular family, or ás having any relations, unless he is actually residing in the family composed of persons to whom the bastard is an illegitimate relation. The wording of the article, either in the French text or in the translation in the Code" of 1825, or in the revision of 1870, does not convey the idea that bastards, or unacknowledged illegitimate children, cannot be considered under any circumstances to be members of a family composed of persons of whom the bastards are the illegitimate relations. This conclusion is applicable particularly to the provisions of subsection 2 of *473 section 8 of the Employers’ Liability Act.”
We do not consider this any authority for the contention made here by opponent-appellant. It is cited only because of the discussion of the term “generally speaking”, as it appears in Art. 238 LSA-C.C.
In Succession of Tyson, 186 La. 516, 172 So. 772, 779, Mr. Justice Fournet had this to say with reference to Art. 238 LSA-C.C.:
“We therefore conclude that the paternity of Louisa’s first five children has not been established, and it makes no difference whether the father is unknown or not if they were duly acknowledged by the mother.
* * * * * *
“We think the record shows that all of Louisa Gibson’s children were duly acknowledged by her in accordance with the jurisprudence of this state. She not only openly and publicly acknowledged that they were her children, but reared and treated them as such until the date of her death, and they were therefore raised to the status of natural children, capable of inheriting from her.”
In the Tyson case Louisa Gibson’s descendants were claimants to the estate, and this case is no authority in the present cáse where a collateral is the claimant. It is cited only because of the statement that the informal acknowledgment of children by the mother raises them to the status of natural children when the father is unknown. Even if the informal acknowledgment of Gus Wesley’s mother raised him to the status of a natural child the position of Luvenia Jackson is no better under the provisions of Art. 924 LSA-C.C. and the cases we have cited supra.
For these reasons we are of the opinion that a legitimate half sister of an illegitimate half brother can not inherit his separate property to the exclusion of his surviving widow.
Accordingly the judgments appealed from are affirmed at the cost of opponent-appellant in both courts.