69 So.2d 8

## SUCCESSION OF WESLEY.

No. 41270.

Nov. 9, 1953.

Robert G. Chandler, Shreveport, for relatrix.

Frank A. Blanchard and Sylvian W. Gamm, Shreveport, for respondent.

HAWTHORNE, Justice.

Gus Wesley, who was born out of wedlock, died intestate without ascendants or descendants, leaving a separate estate. The claimants to this estate are Della Wesley, his widow, and Luvenia Jackson, a half-sister of legitimate birth. Both the district court and the Court of Appeal, Second Circuit, 64 So.2d 470, concluded that the widow was entitled to the separate estate of the deceased, and the case is now before us for review.

The deceased Gus Wesley was the illegitimate child of Maria Rose and an unknown father. After his birth his mother married Silas Rose, and the relatrix Luvenia Jackson is the lawful child of that marriage.

The relatrix avers that the deceased Gus Wesley was reared in his mother's home as her son and acknowledged by her as such, and in this court there does not seem to be any issue of her acknowledgment of him. Consequently we shall treat and consider the deceased as the legally acknowledged and natural child of his mother.

Articles 912 and 924 of the Civil Code, upon which the relatrix bases her claim to the separate estate, read as follows:

"Art. 912. If a person dies, leaving no descendants nor father nor mother, his brothers and sisters, or their descendants, inherit the whole succession to the exclusion of the ascendants and other collaterals."

"Art. 924. If a married man has left no lawful descendants nor ascendants, nor any collateral relations, but a surviving wife not separated from bed and board from him, the wife shall inherit from him to the exclusion of any natural child or children duly acknowledged."

It is the contention of the relatrix Luvenia Jackson that she is a "sister" within the meaning of Article 912 and a "collateral relation" within the meaning of Article 924. Our study of the whole subject of successions in our Code leads us to the conclusion that, should we hold that the relatrix is a "sister" under Article 912, we would be holding in effect also that this is a "legal succession".

According to our Civil Code, there are three sorts of successions: (1) The testamentary succession, or that which results from the institution of an heir contained in a testament executed by the deceased; (2) the legal succession, or that which the law has established in favor of the nearest relation of the deceased, and (3) the irregular succession, or that which is established in favor of certain persons, or of the State in default of heirs either legal or instituted by testament. Arts. 875, 876, 877, 878.

The kinds of heirs that correspond to these three species of successions are described in Article 879 as: (1) Testamenta-

ry or instituted heirs; (2) legal heirs or heirs of the blood, and (3) irregular heirs.

■ Article 912, under which the relatrix claims as a "sister" of the deceased, is found in our Code in Book III, Title I—Of Successions, Chapter 2, which deals with that sort of succession designated in the Code as "legal succession". To be a "sister" within the contemplation of that article and to be entitled to inherit the separate estate of the deceased, the relatrix would have to be a legal heir or heir of the blood and the nearest relation of the deceased. Her argument poses the question: Is a half-sister of legitimate birth the legal heir or heir of the blood and the nearest relation of a deceased illegitimate child?

■ According to Article 238 of our Code, illegitimate children, generally speaking, belong to no family and have no relations. Relatrix attaches great significance to the words "generally speaking" in the article and argues that the redactors intended to convey that in some instances illegitimate children do have relations. We consider Article 238 as nothing more than a statement of how illegitimate children are traditionally regarded in our law, and our conclusion is substantiated by Domat's discussion in his treatise on the civil law.

"Children lawfully begotten are those who are born of a marriage lawfully contracted. And bastards are such as are born out of lawful wed-

lock." 1 Domat's Civil Law (Strahan's tr. 2d ed.), sec. 76, p. 137.

"* * * by our usage·no man succeeds to a bastard dying intestate but his children, if he has any lawfully begotten; and they likewise succeed to nobody, except it be by testament. *This right of succession to bastards is grounded upon this, that the succession of one who dies intestate is conveyed by the relation of blood that is between the heir and the person to whom he succeeds,· and that we do not own any other relation besides that which one has by being born in lawful wedlock.* * * * [Italics ours.]

"Bastards are incapable of succeeding to intestates, unless it be to their own children, if they have any lawfully begotten; and they do not so much as succeed to their own mothers. For they do not reckon in families any person in the number of relations who are capable of inheriting, except such as are placed in that rank by their being born in lawful wedlock. And as bastards cannot succeed to any who die intestate, so likewise nobody can succeed to them when they die intestate, except their own lawful children, not even their mothers. * * *

"Bastards who have estates may dispose of them by will, and their children may succeed to them as their heirs at law, if they have any that are lawfully

begotten. But if they die without children, and intestate, as they have no legal parentage with any person, so they can have no heir at law." 2 Domat, op. cit. supra, sec. 2455, p. 26; sec. 2497, p. 49; sec. 2571, p. 88.

▆▆ Thus, since Gus Wesley, the deceased, was born out of wedlock, the relatrix could not be his nearest relation under Article 877, or a legal heir or heir of the blood under Article 879. She could not be a sister of the deceased under Article 912, therefore, because, as pointed out hereinabove, that article is found in the chapter dealing with legal successions, and the word "sister" therein means "lawful sister" or sister of the blood. The succession of the deceased is not a legal succession since he was an illegitimate or natural child without issue and could have no lawful heirs or heirs of the blood.

▆ This is an irregular succession, or one which is established by law in favor of certain persons, or of the State *in default of heirs either legal or instituted by testament*, and is governed by Chapter 3 of the Succession Title. Cross on Successions, sec. 55, p. 73, lists the irregular successors as: (1) Natural children acknowledged; (2) husband or wife succeeding the one the other; (3) natural father or mother, or both; (4) natural collaterals; (5) the State. Our study has convinced us that the legitimate brothers and sisters of a natural

child do not come within any of the above classifications and are never called to the succession of the natural child.

Articles 922 and 923 deal with the successions of natural children. Article 923 reads:

"If the father and mother of the natural child died before him, the estate of such natural child shall pass to his natural brothers and sisters, or to their descendants."

The corresponding article of the Code Napoleon read as follows:

766. In case of the previous decease of the father and mother of the natural child, the property which he has received from them passes to the legitimate brothers or sisters, if found in kind in the succession * * *. All other property passes to the natural brothers or sisters, or their descendants."

Planiol's discussion of the article of the French Code is most enlightening in view of the particular situation presented by this case. He says:

When the natural child has left neither issue nor father nor mother, before calling his spouse or the State to his succession, the law calls his *natural brothers and sisters*, that is to say, *the other natural children of the same father or the same mother*. This is a notable derogation of the

ordinary rules, because for natural children there does not exist any bond of kinship with the relations of their father or of their mother. These rules are put aside in favor of the natural brothers and sisters, who are permitted to inherit from one another reciprocally out of regard for their unhappy position, common to all: They have no relations outside of their father and mother; they have no hope at all of inheriting from intestate successions, and they are ordinarily without personal fortune. It is indeed the least that can be done, when one of them has prospered in life and leaves more or less important assets, to permit the others to inherit from him.

One would expect, Planiol continues, to see legitimate brothers and sisters of the natural child come together into his succession with his natural brothers and sisters. However it is not so. Here, then, is an instance where, by consideration of equity, natural relations are better treated than legitimate relations. Nevertheless these latter have a special right: If the law does not call them to receive the succession in a general manner, it authorizes them to take the goods which have been given to the deceased natural child by their common author, when these goods are still found in kind. [This special right was not given in the Louisiana Civil Code.]

As to the expression "legitimate brothers and sisters of the natural child", Planiol explains: There must be no misunderstanding of the sense of this expression: It does not signify that the children are *legitimate brothers* of the natural child: Between them and him there can be only a bond of natural kinship; it signifies simply that they are *legitimate children* of the person of whom the other is *the natural child*. But there is no way of designating them otherwise, and the expression is accepted with this particular meaning.

This priority given to natural children over legitimate children, Planiol explains, is the result of an observation made to the Council of State during the discussion of the Projet of the French Code. It was remarked that natural children can never inherit from the legitimate children who are their brothers and sisters: It would then be contrary to the principle of reciprocity that the legitimate children come to the succession of their natural brothers and sisters. In consequence the text of the Projet which called them all concurrently was modified. Planiol, Traité Élémentaire de Droit Civil (3ᵉ éd.1905), T. III, nᵒˢ 1855, 1858, pp. 358, 359.

■ This discussion makes it clear that the relatrix Luvenia Jackson is not a natural sister, but a legitimate sister of the deceased. Strictly speaking, of course, she is not in legal contemplation a "legitimate sister" of the natural child Gus Wesley, for between her and him there could be only a bond of natural kinship, since she is a

legitimate child of Maria Rose of whom Gus Wesley was a natural child. This discussion shows how the relatrix can be a "legitimate sister" of the deceased and yet not be a "sister" within the contemplation of Article 912, and how she can have a natural kinship to the deceased and yet not be a "natural sister" under Article 923.

 Under Article 923 the natural brothers and sisters of a deceased natural child, the other natural children of the same parent, are called to his succession if his father and mother died before him, and this, in effect, excludes his brothers and sisters of legitimate birth from inheriting from him. Reciprocally, a natural child cannot inherit from the children of his mother or father born in wedlock. Under Article 921 the natural child has no right of inheritance from the legitimate relations of his father and mother. Under this article Gus Wesley, if he had survived the relatrix, would have had no right of inheritance in her succession.

This has been the appreciation of two recognized authorities on our Code. Saunders in his Lectures on the Code, p. 193, says:

"* * * If the natural child leaves neither father nor mother, then his natural brothers and sisters inherit his estate; and beyond that there is no inheritance from a natural child except on the part of the State—the State inherits the natural child's estate if he leave neither father nor mother nor [natural] brothers or sisters. And the converse of that is true, that the natural children do not inherit from the legitimate relations of their parents."

Likewise, Cross on Successions, p. 74, states:

"If there is no father or mother, who has acknowledged the deceased natural child, his natural brothers and sisters [or their descendants] are called to the succession * * *

"No other collaterals are recognized in irregular successions. * * *"

 We next consider whether the relatrix is a "collateral relation" in the contemplation of Article 924, found in the chapter on irregular successions, which permits a surviving wife to inherit only "if a married man has left no lawful descendants nor ascendants, nor any *collateral relations*". A study of Chapter 2, which, as we have heretofore pointed out, treats of legal successions, makes it clear that "relations" means "heirs of the blood" or "lawful kindred", and therefore "collateral relations" means "lawful collateral kindred". The relatrix, who had only a natural kinship to the deceased, is therefore not a "collateral relation" within the contemplation of the article.

Any other conclusion would cause Article 924 to be inconsistent with other articles.

treating of irregular succession. We could not conclude that the redactors would by such indirect language as is contained in Article 924 call the legitimate brothers and sisters to the succession of a natural child when the positive language of another article effectively excludes them.

Furthermore, the courts of this state have said that "collateral relations" as that term is used in Articles 924 and 917 of the Code, both of which are in Chapter 3, means "legal or lawful collaterals." Montegut v. Bacas, 42 La.Ann. 158, 7 So. 449, 450; Hite v. Hite, La.App., 171 So. 429; Felix v. Bruce, 14 Orleans App. 64.

The cases in our jurisprudence which are in accord with our conclusion allowing the surviving wife to recover are: Montegut v. Bacas, supra; Hite v. Hite, supra; Succession of Falls, 4 La.App. 10; In re Nereaux's Estate, 112 La. 572, 36 So. 594; Felix v. Bruce, supra; see also Succession of Briscoe, 2 La.Ann. 268; Jones v. James, 12 La.App. 224, 125 So. 761.

In the case of Succession of Falls, supra, in which writs were denied by this court for the reason that the judgment was correct (see our docket No. 27,835), the identical question was presented as in the instant case. There the separate estate of the deceased, an illegitimate daughter of Mary Bingham, was claimed by the surviving husband and by the children of Mary Bingham born of her marriage with Robert Bingham. The court correctly concluded that the surviving husband inherited the separate estate to the exclusion of the other claimants, but in the course of the opinion the court said:

> "The children of Mary Bingham, issue of her marriage with Robert Bingham, are the *natural* brothers and sisters of Simonette Reason Falls [the deceased illegitimate child of Mary Bingham]." (Italics ours.)

It was incorrect to designate the legitimate children of Mary Bingham, those born in lawful wedlock, as the *natural* brothers and sisters of Simonette Reason Falls, born out of wedlock, because legitimate brothers and sisters, although theirs is a natural kinship to a natural child, are referred to as "legitimate" brothers and sisters to distinguish them from the brothers and sisters who are also illegitimate. The result reached by the court in that case, however, was correct.

In the instant case, the Court of Appeal in denying a rehearing conceded that there was merit to relatrix' contention that there exists a considerable degree of uncertainty, if not of actual conflict, in the jurisprudence of this state, but stated that any clarification of existing uncertainty must of necessity emanate from the Supreme Court.

We do not find any actual conflict in the jurisprudence, for the results reached in the cases cited hereinabove appear to be cor-

rect. We concede that due to the nomenclature and somewhat loose expressions used in the cases there exists some confusion. This confusion no doubt arose because of the failure of the courts in some of the cited cases to recognize that legitimate children of the father or mother are not natural brothers and sisters of the natural child, a typical example being the case of Succession of Falls, discussed hereinabove.

We feel that we have made clear the meaning of the term "natural brothers and sisters", but there is another expression which requires some clarification. In several cases of this nature, as pointed out by relatrix, the expression "legitimate brothers and sisters of the natural child" is used when referring to the legitimate children of the same parent. As pointed out by Planiol, op. cit. supra, there must be no misunderstanding of the sense of this expression. It does *not* signify that the legitimate children are legitimate brothers of the natural or illegitimate child, for between them and him there can be only a bond of natural kinship; it signifies simply that they are legitimate children of the person of whom the other is the natural child. Thus in the instant case the relatrix is not, strictly speaking, the legitimate half-sister *of the deceased*, who was an illegitimate child, but this designation is accepted for want of a better one.

For the reasons assigned, the judgment of the Court of Appeal, Second Circuit, is affirmed, relatrix to pay all costs.