HAWTHORNE, Justice
(dissenting).
The error of the majority, in my opinion, is in deciding this case according to what they consider the law ought to be, rather than according to what the writers of our Code intended to be the law. As noted in the majority opinion, this court observed at an early date that the redactors of our Code had not followed the French view as to the place of a surviving spouse in an irregular succession. The French in- their Code of 1804 provided that natural children would exclude a surviving spouse. Art. 767, French Civil Code. In our Code of 1808 the surviving wife excluded a natural child, and a surviving husband inherited from his wife in default of regular successors unless she left a natural child. Civil Code of 1808, p. 156, Art. 50. It was apparent to the court in 1834 in the case of Victor v. Tagiasco’s Ex’r, 6 La. 642, therefore, that our redactors by thus departing from the French had deliberately placed the surviving spouse ahead of all other irregular successors except the natural child in the succession of his mother.
In Succession of Ducloslange, 2 La.Ann.. 98, this court discussed thoroughly the issue presented by the majority opinion in the instant case and said: “After mature consideration, we are satisfied that, the opinion in that case [Victor v. Tagiasco’s. Executor] is a correct exposition of the law of irregular successions.” In my opinion this court should give more “mature consideration” to the reasoning in the Ducloslange case before upsetting the jurisprudence on this point. In addition to the cases cited in the majority opinion the view of the Victor case has been followed in Montegut v. Bacas, 42 La.Ann. 158, 7 So. 449; Succession of Falls, 4 La.App. 10; Hite v. Hite, La.App., 171 So. 429; Wilson v. Rogers, La.App., 14 So.2d 650.
Although the Code, has been revised since this was established as the law by the jurisprudence, no change was made in the articles at issue here, and the Legislature has. never amended the articles to reject this. *1006 court’s interpretation. Furthermore, the natural mother, plaintiff-appellant, does not attack the reasoning in these cases or suggest that it be rejected and the cases overruled. The basis of her whole argument is that the words “lawful ascendants” in Article 924 should be liberally construed to include a mother who has acknowledged her illegitimate child. This argument, of course, could not prevail. See Succession of Wesley, 224 La. 182, 69 So.2d 8. Under these circumstances this line of jurisprudence should not be rejected except for the most compelling reasons and a clear showing that we had previously erred.
The majority of the court say that they are changing the jurisprudence because they agree with the discussions of the two French commentators Tissandier and Rogron. The Tissandier discussion cited is concerned with the reasons why the French departed from the French customary law which did not allow an illegitimate, without descendants, to succeed to anyone, and likewise allowed no one to succeed to him, and explains why the natural relatives of the natural child should be preferred to the state. The preference of the natural relatives over the spouse is not a part of the discussion cited in the majority opinion. The Rogron discussion sets out reasons for favoring natural relatives over a surviving spouse, i. e., he or she is a stranger to the deceased and has succession rights in his or her own family. Such reasoning was clearly rejected by our redactors when they drafted the first paragraph of Article 924 favoring the surviving wife over a natural child.
That our legislators have not considered the surviving spouse the “stranger” to the deceased as have the French is further shown by Louisiana Act 408 of 1938, amending Article 915 of the Civil Code. By that act the surviving spouse was made a legal heir as to the community property. Such legislation is inconsistent with the “stranger” view of the French. The French on the other hand by Law of March 25, 1896, have made natural children and their parents regular successors as to each other. The divergence of viewpoint that existed when the French Code of 1804 and our Code of 1808 were written, therefore, has been extended in each system of law by subsequent legislation.
I am reminded by the court’s method of decision in this case of the observation of Cross in his introduction to his Treatise on Successions. He points out that our succession law has been affected by nine different systems of laws, and that the authority of the French commentators on the Code Napoleon is often misapplied in consequence of not regarding the fundamental differences which exist in many departments of doctrine between the two systems. Cross on Succession, pp. vii-xxx. The reasoning of the French commentators adopted by the court in this case is not sufficient to cause me to subscribe to the decision overruling a long line of jurispru *1008 dence. If the law relating to irregular succession should be changed to reflect changed social thinking, that is a matter for the Legislature.
By giving complete effect to the French view of the low position of a spouse in the succession line and disregarding the clear rejection of that view in our Code in Article 924, the court in this opinion adds confusion to. our law rather than clarifying it. Will a natural- mother now be permitted- to participate with a surviving wife in the, community estate under Article 915, even though a natural- child would be excluded under Articles 919 and 924? The reasoning of the majority that the natural mother and father should enjoy a right of inheritance equal to the position of the lawful mother and father in the succession of a legitimate child indicates such a result. How will a conflict among a natural mother, a natural child, and a surviving spouse as to a deceased’s separate estate be resolved? Under Article 924 the wife will prime the child, under Article 922 the child will prime the mother, and under this decision the mother will prime the wife. This vicious circle demonstrates that the court is proceeding under a theory that is not consistent with that of the redactors of the Code. The decisions in the cases that the court rejects here were consistent with the codal text and eliminated such irreconcilable conflicts. I consider those decisions to be sound and therefore respectfully dissent.