CLEMENT M. MOSS, Judge ad hoc.
Miss Mamie Israel died at her domicile in New Orleans, Louisiana on April 22, 1960, leaving a last will and testament, with a codicil, which was probated on May 9, 1960. Pier will, dated April 25, 1957, and the codicil, dated May 3, 1957, contained several bequests and named the Whitney National Bank of New Orleans as executor.
On April 28, 1960, a petition was filed by Mrs. Marie Louise Levy Hiller and Stanford J. Levy, Jr., alleging they were the grandniece and grandnephew, respectively, of the decedent, and were her sole heirs, praying for judgment recognizing them as such and decreeing the will and codicil null and void. The will and codicil were attacked on the alleged insanity, imbecility and senility of the decedent on the dates thereof, producing a lack of capacity to make, or understand the meaning of, said documents.
Exceptions of no right of action and want of interest to institute said demand, were filed by the testamentary executor and various legatees and, after hearings on said exceptions, the same were maintained and the opposition to the will and codicil was dismissed. The matter is now before this Court on an appeal from the judgment.
In their petition, opponents of the will and codicil allege they are the only children of Stanford J. Levy, Sr. and his wife,. Mrs. Miriam Strauss Levy; and that the mother of Stanford J. Levy, Sr. was Ernestine Israel, wife of Albert Levy, of which marriage three children were born: Milton'. Levy, who died in infancy; Harold J. Levy and Stanford J. Levy (Sr.), both of whom-, predeceased Miss Mamie Israel. They further allege that Mamie Israel had two sisters, the said Ernestine Israel, who married Levy, and Augustine Israel, who married-Lazard Bloch; that Ernestine and Augustine both died before Mamie Israel; and that Augustine Israel Bloch left no-descendants. Opponents do not allege the parentage of Ernestine, Augustine or Mamie Israel and only inferentially, by the allegation they were sisters, allege-they have the same father and mother. It is not disputed that Joseph Israel and his. wife, Marie Louise Generes Israel, were-the legitimate parents of Ernestine and' Augustine Israel. The exceptions raise the issue of the parentage of Miss Mamie-Israel and her legitimacy vel non.
Opponents urge that there is a strong-presumption of the legitimacy of a child in the absence of the registry of birth and-' baptism to establish legitimacy, and that: hearsay evidence is admissible to establish-birth, marriage, descent and relationship. Opponents cite LSA-Civil Code, Articles. 194, 195, 950, and 952 and a number of cases, the most pertinent of which are Clapier v. Banks, 10 La. 60; Succession of Curtis, 161 La. 1045, 109 So. 832; Succession of Kneipp, 172 La. 411, 134 So. 376; *55 Boykin et al. v. Jenkins, et al., 174 La. 335, 140 So. 495; Succession of Anderson, 176 La. 66, 145 So. 270; Succession of Marcour, 180 La. 129, 156 So. 198; In re Gray’s Succession, 201 La. 121, 9 So.2d 481; Succession of Gaines, 227 La. 318, 79 So.2d 322; and Succession of White, La.App., 85 So.2d 528.
In support of the claimed status of Mamie Israel as a legitimate child of Joseph Israel and his wife, Marie Louise Generes Israel, opponents produced sixteen witnesses. None could remember Joseph Israel, who died on October 26, 1871. Only three of the witnesses knew Joseph Israel’s wife, Marie Louise Generes Israel, who died in 1910. The three mentioned, and one other witness, first knew the Israel household in about 1894 to 1896, whereas the remaining witnesses, with two exceptions, knew Mamie Israel and the Levy family only within the last twenty-five or thirty years. This evidence establishes that Mamie Israel was a member of the household presided over by her alleged mother from about 1894 to the death of Mrs. Israel in 1910; that Mamie Israel was treated as a daughter during that period; that, since 1894, Mamie Israel was treated and referred to as a sister by Ernestine Israel Levy and Augustine Israel Bloch (admittedly legitimate children of Joseph Israel and Marie Louise Generes Israel); and that Mamie Israel was considered by other relatives and friends of the family as a daughter of Marie Louise Generes Israel and a member of the family. Although there was some testimony about the possible unknown parentage and illegitimacy of Mamie Israel prior to her death, the hearsay evidence referred to, properly admitted by the Court, established a presumption of the legitimacy of Mamie Israel. This presumption was further upheld by a legacy in the will of Augustine Israel Bloch naming Mamie as her “sister”, as well as by published death notices reciting the relationship now asserted by opponents. This presumption probably would have prevailed, in the absence of positive evidence to the contrary that was produced by the proponents of the will of Mamie Israel.
It was proven, by competent evidence, that Joseph Israel, the alleged father of Mamie Israel, died on October 26, 1871, It was also proven that Mamie Israel was born in December, 1873, over two years after the death of Joseph Israel, who, therefore, could not have been her father; see LSA-Civil Code, Article 187. The birth date of Mamie Israel, for which there was no birth registry or baptismal record, was established by certified extracts of United States Census Records for the years 1880, 1900 and 1910. While these records confirm the fact that Mamie Israel was a member of the household presided over by her alleged mother and refer to her as a “daughter”, they consistently reflect her progressive age based upon her birth in December, 1873.
The evidence also establishes a definite pattern of the registry of the birth and the baptism of each child of the marriage of Joseph Israel and his wife. It is not disputed that there were at least four children issue of the marriage. These were Ernestine, born March 8, 1862; Josephine, born September 2, 1863; Augustine, born July 14, 1865; and Samuel George, born February 22, 1868. The birth of each was duly registered and each was baptized, as evidenced by the vital statistics records and church baptismal records, respectively. The failure to register the birth of Mamie Israel and to accord her the usual rites of baptism is persuasively strong corroboration of the contention that Mamie Israel was not issue of the marriage of Joseph Israel and his wife.
Other evidence was submitted by proponents of the will which additionally rebuts the presumption of the legitimacy of Mamie Israel. Documentary evidence was produced to show that Joseph Israel, at the time of his death, was a partner with Simon Herman and Joseph Vignes in a mercantile business. Two days following his death, the succession of Joseph Israel *56 was opened on a petition filed by his co-partners, alleging that he was survived by his wife and three children, Ernestine, Augustine and Samuel George Israel, minors. In the succession proceedings, the widow qualified as natural tutrix of her said three minor children. In a subsequent proceeding in February, 1875, the Court approved a settlement of the partnership and payment to the widow and the three minor children. These proceedings were approved by the Under-Tutor of the minors, Marx Bloch, who for many years reputedly had been a member of the Israel household. As argued to this Court, it must be concluded that Joseph Israel’s partners, his widow and Marx Bloch knew that Joseph Israel was survived by only three children and proceeded accordingly to liquidate the partnership and to settle his estate. These proceedings omitted any reference to Mamie Israel.
Confronted with documentary evidence of the birth and baptism of four children as issue of the marriage of Joseph Israel and his wife and the lack of any registry of birth or record of baptism of Mamie Israel, opponents asserted that Mamie Israel was the same person as Josephine Israel. The record is devoid of any evidence to substantiate such assertion. Not one witness ever knew Mamie as Josephine, or vice versa, although several were acquainted with Mamie and the Israel household for various periods of time, beginning as early as 1894. It is reasonable to assume that one or more of the witnesses, who claimed to have intimate knowledge of the Israel household, would have known that “Mamie” was a nickname for Josephine if such was a fact. It is not necessary, however, to indulge in any assumption on this claim, as documentary evidence establishes the birth of Josephine Israel on September 2, 1863 and her baptism on May 2, 1864, whereas the census records show the birth of Mamie in December, 1873. Furthermore, evidence was produced showing the burial of Josephine Israel on July 12, 1866 at the age of two years and ten months, which was exactly that period of time from the date of her birth as established by her birth and baptismal records. Opponents attack the evidence of her burial, in the absence of a death certificate, on the lack of proper certification of the mortuary record and on the testimony of one of the opponents that he was unable to locate “vault No. 44” in which the record indicated Josephine was interred. An examination of the photostatic extract copy of the mortuary record shows it was certified under the seal of St. Louis Cemetery. As stated by the trial judge, the “attempt to discredit the Burial Record through the testimony of one of the opponents themselves was not impressive”. At best, it was negative in nature and not shown to have been substantiated by proper diligence in its development. Again, the proceedings taken upon the death of Joseph Israel significantly deny the validity of the opponents’ claim that Mamie was Josephine and that Josephine did not die in 1866, as these proceedings not only omit the name of Mamie but also omit the name of Josephine as a surviving child of Joseph Israel.
This Court concludes, as did the district judge in his comprehensive written reasons for judgment, that Mamie Israel was not a child of the marriage of Joseph Israel and his wife, Marie Louise Generes Israel. It is not deemed necessary to review or consider the testimony of certain proponents of the will which susbtantiates, by hearsay, the conclusion reached by the court.
On behalf of the opponents, it is finally argued that, if the Court should not conclude that Mamie Israel was a legitimate child of the marriage of Joseph Israel and Marie Louise Generes Israel, it should conclude that she was the natural child, informally acknowledged as such, by Mrs. Israel. First, it is noted that there is no evidence that Mamie was the natural child of Mrs. Israel other than the fact that she was generally held out and recognized as her daughter as shown by the testimony of several witnesses reviewed in this opinion. *57 It is undisputed that the opponents are the descendants of Mrs. Ernestine Israel Levy, a legitimate child of Joseph Israel and his wife. Assuming, arguendo, that Mamie Israel was a natural child of Mrs. Israel, Mamie would bear no legitimate relationship to Ernestine or Ernestine’s descendants. If opponents’ allegations with respect to the non-validity of Mamie’s will are true, her succession would be intestate and irregular. She died unmarried, without leav-ig ascendants or descendants and as a natural (assumed) child. Under such circumstances, natural brothers and sisters or their descendants would inherit from Mamie Israel, but legitimate brothers and sisters or their descendants would not be entitled to inherit from her.
In the Succession of Wesley, 224 La. 182, 69 So.2d 8, the decedent was born out of wedlock, and died intestate leaving no ascendants or descendants. The claimants to- his separate estate were his widow and a half-sister of legitimate birth. In construing LSA-Civil Code, Articles 922 and 923, relating to the intestate succession of a natural child, the Court concluded that “legitimate brothers and sisters of a natural child * * * are never called to the succession of the natural child.” The Court approved the explanation by Planiol that the expression “legitimate brothers and sisters of a natural child” signifies simply that they are legitimate children of the person of whom the other is the natural child, and the expression is used to distinguish the “legitimate brothers and sisters from the brothers and sisters of the natural child who are also illegitimate. Accordingly, the Court concluded that the half-sister of legitimate birth did not inherit from the decedent, under the provisions of Article 912, 923 or 924, as she was not a “sister” within the meaning of Article 912, she was not a “natural sister” within the meaning of Article 923, and she was not a “collateral relation” (lawful) within the meaning of Article 924.
It was pointed out in the Wesley case that, under Civil Code Article 921, the natural child has no right, of inheritance to the estate of the legitimate relations of his father or mother. Further analysis by the Court confirmed the reasoning of Planiol that: “It would then be contrary to the principle of reciprocity that the legitimate children come to the succession of then natural brothers and sisters.”
 Applying the pronouncements of the Wesley case to the alternative assertion of opponents in the present case, the district ■judge thus concluded:
“Since brothers and sisters of legitimate birth cannot inherit from the natural child, neither can the descendants of the brothers and sisters of legitimate birth inherit from such a child. It follows then that the opponents have no standing to contest this will even if they could prove that the mother had acknowledged Mamie Israel.”
It is argued that the cited case, Succession of Wesley, is not pertinent and that the opinion therein is largely “obiter dicta”, as it involved the respective claims of a widow and a half-sister of legitimate birth. This contention is considered unsound, as the right, if any, of the half-sister of legitimate birth, to inherit in that case was not rejected on basis of the superior right of the surviving widow to inherit decedent’s separate estate, but on the basis that the half-sister of legitimate birth had no right of inheritance whatsoever.
Plaintiffs and appellants, having failed to establish that they are the grandniece and grandnephew, respectively, of the deceased, Mamie Israel, or that they would inherit from her if her will should be successfully attacked, have no real or actual interest to assert or protect; Code of Practice, Article IS, now LSA-Code of Civil Procedure, Article 681.
For the reasons assigned, the judgment appealed from is affirmed at the cost of appellants.
Judgment affirmed.