810 So.2d 1265 (2002)
SUCCESSION OF Audrey Farque HELMS.
No. 01-1357.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
*1266 Maurice L. Tynes, Maurice L. Tynes & Associates, PLC, Lake Charles, LA, for Appellant Nancy Ann Helms Berger.
Carl H. Hanchey, Jones, Tete, Nolen, Hanchey, Fonti & Belfour, Lake Charles, LA, for Appellee Beverly Lenore Helms Hines.
Court composed of HENRY L. YELVERTON, ULYSSES GENE THIBODEAUX, and OSWALD A. DECUIR, Judges.
YELVERTON, J.
This is a dispute over the interpretation of a will. Audrey Farque Helms died on November 28, 1999. She was married but once and then to Herman Helms who pre-deceased her. She left two daughters, Beverly Helms Hines and Nancy Helms Berger. At the time of her death, Mrs. Helms owned a residence in Lake Charles, Louisiana, an undivided one-half interest in other real estate in Calcasieu Parish, four bank accounts worth a total of $32,679.25, and stocks worth $689,149.47. Interpreting the deceased's last will and testament as leaving Beverly everything and Nancy nothing, the trial court rendered *1267 judgment accordingly. Nancy appealed. We affirm.
Mrs. Helms left a statutory will dated July 24, 1996. The dispositive language of the will is found in Articles numbered II, III, and IV. Articles II and III are here quoted:
II.
I hereby will and bequeath unto my daughter, Beverly Lenore Helms Hines, the home in which I am living at the time of my death, including the contents thereof, any personal possessions that I have, any jewelry which I die possessed and any automobiles that I own at the time of my death.
III.
I hereby will and bequeath unto Robert G. Dunn, as Trustee for my daughter, Nancy Ann Helms Berger, the minimum portion allowed by Louisiana law, in existence at the time of my death. This bequest is to be held in trust under the following terms and conditions:
The will thereafter set up a spendthrift trust for "the minimum portion allowed by Louisiana law." We next quote Article IV:
IV.
All the rest and residue of my estate, I hereby will and bequeath unto my daughter, Beverly Lenore Helms Hines.
The succession was opened on the petition of Beverly and her husband, Earl Hines, the persons named as co-executors in the will. They presented the testament for probate, filed with it an affidavit of death and heirship[1] and a detailed descriptive list of succession property. They then petitioned for possession, praying that Beverly be recognized as the sole beneficiary and universal legatee of her mother's will.
Nancy opposed the recognition of Beverly as the sole legatee. She contended that Article III of the testament, together with the creation of a testamentary trust, compels an interpretation of the will as leaving her "something" as opposed to "nothing."
The interpretation of testaments is governed by Louisiana Civil Code articles 1611 through 1616. At the time the succession was judicially opened, Article 1611 provided:
The intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules for interpretation apply only when the testator's intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence.
Because there was no evidence taken as to testamentary intent, the interpretation of the will must be confined to its four corners.
"Courts must interpret a will according to its plain language since `the intent of the testator is the paramount consideration in determining the provisions of a will.'" Succession of Hackney, 97-859, p. 5 (La.App. 3 Cir. 2/4/98); 707 So.2d 1302, 1306, writ denied, 98-596 (La.4/24/98); 717 So.2d 1172 (quoting Succession of Schiro, 96-1567, p. 6 (La.App. 4 Cir. 4/9/97); 691 So.2d 1374, 1377, writs denied, 97-1400, 97-1423 (La.9/5/97); 700 So.2d 518). The intention of the deceased must be ascertained from the whole will, and effect must be given to every part of *1268 the will as far as the law will permit. "Where it is a question of the choice between two interpretations, one of which will effectuate, and the other will defeat, a testator's intention, the court will carry out the intention of the testator." Carter v. Succession of Carter, 332 So.2d 439, 441 (La.1976) (quoting Succession of LaBarre, 179 La. 45, 48, 153 So. 15, 16 (1934)). Additionally, Louisiana case law has recognized that in the interpretation of wills, the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. "The testatrix is not supposed to be propounding riddles but rather to be conveying her ideas to the best of her ability so as to be correctly understood at first view." Succession of Meeks, (La.App. 2 Cir.1992); 609 So.2d 1035, 1038, writ denied, 612 So.2d 86 (La. 1993).
On appeal Nancy assigns two errors in the trial court's decision. First, she claims that the trial court erred in interpreting Mrs. Helms' will as intending to leave Nancy nothing. Nancy makes the argument that a portion, though the minimum, is nevertheless something, not nothing. We reject this argument. Mathematically, the argument is a respectable one, but what we are interpreting here is the testatrix' intent, not the mathematical literacy of her choice of words. In its oral reasons, the trial court found that "it's very, very clear that what Ms. Helms intended to do was to leave her daughter Nancy as little as possible." We agree. Forced heirship as we once knew it no longer being the law of this state, and Nancy no longer having the benefit of its protection, "the minimum portion allowed by Louisiana law" in the context has no measurable value and is equivalent to zero.
Mrs. Helms' intention is apparent from the text of her will. She stated that she wanted to leave Nancy the "minimum portion allowed by Louisiana law, in existence at the time of [her] death." The will, by its plain language, indicated an intent to leave to Nancy as little as possible under the law in effect at the time of Mrs. Helms' death. Nancy's argument adds the word "forced" into the "minimum portion" language of the will. However, the will contains no language that indicates an intent to leave to Nancy what would have been her forced portion under prior forced heirship laws. At the time of her mother's death, Nancy, healthy and beyond the age of 23, was not a forced heir. Not only did Mrs. Helms want Nancy to receive the least amount condoned by the law, but she also wanted the law in effect at the time of her death to control exactly what, if anything, Nancy was entitled to, not law that had been changed prior to the execution of the will. The state of the law regarding forced heirship remained unchanged in the interval between the confection of the deceased's will and her death.
The creation of a spendthrift trust in the will does not compel a finding of a testamentary intent that Nancy would get "something" instead of "nothing." It was just another effort to plug all holes. If by some chance the law at the time of the deceased's death required that Nancy receive "something," the spendthrift trust was there to take care of that "something."
As her second assignment of error, Nancy asserts that the trial court erred in approving a judgment which "disinherited" her under a will leaving to her the "minimum portion allowed" by Louisiana law. This is pretty close to the same argument addressed above. The answer is the same. Nancy was not a forced heir under the law, because she was over the age of 23 and had no mental or physical infirmity. Had Nancy developed such an incapacity, she would have become a forced heir and the will would have provided her with a forced portion of her mother's estate. However, *1269 because Nancy was not a forced heir under this will in this succession, the minimum amount Louisiana law allowed Mrs. Helms to leave her was zero. She has not been "disinherited."
For the reasons assigned, we affirm the trial judge's interpretation of the will and the judgment of the trial court awarding all the deceased's property to Beverly Helms Hines. Appellant will pay all costs.
AFFIRMED.
NOTES
[1] This affidavit established that both daughters were over the age of 24 and physically and mentally competent.