# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-1053


**SUCCESSION OF KEFFER THOMAS DELINO, II**

**VERSUS**

**THE JAKE DELINO TRUST, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 98814
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Van H. Kyzar, Judges.

**REVERSED**.


Louis G. Garrot, III
P. O. Box 366
Abbeville, LA 70511-0366
Telephone: (337) 652-8618
COUNSEL FOR:
    Plaintiff/Appellee - Succession of Keffer Thomas Delino, II

Lawrence L. Lewis, III
Onebane Law Firm, APLC
P. O. Box 3507
Lafayette, LA 70502-3507
Telephone: (337) 237-2660
COUNSEL FOR:
    Defendant/Appellant - Carole Delino Niebler

**Paul G. Moresi, III**
**P. O. Box 1140**
**Abbeville, LA 70511-1140**
**Telephone:  (337) 898-0111**
**COUNSEL FOR:**
    **Defendants/Appellants - The Jake Delino Trust and James D. Delino, Jr.**

**THIBODEAUX, Chief Judge.**

Plaintiff, the succession representative of the Succession of Keffer Thomas Delino, II, filed suit against the defendants, the Jake Delino Trust (Trust), Carole Delino Niebler (Carole), and James D. Delino, Jr. (Jimmy), seeking to annul a transfer of trust interest. Created in the testament of James D. Delino, Sr. (James), the Trust named both Jimmy and his brother, Keffer Thomas Delino, II (Keffer), income beneficiaries for life and directed the trustee, upon their deaths, to distribute the corpus of the trust to their "legal heirs." After Keffer's passing, a one-half interest in the corpus was transferred to Jimmy subject to a lifetime usufruct in favor of their mother, Carole, as directed by our law on intestacy. The trial court, however, found that Keffer's universal legatee was his only legal heir and granted the motion to annul the transfer.

Interpreting the Trust in accordance with the law in effect at the time of its creation, we find that the trial court legally erred in his judicial construction of the term "legal heir" and in his annulment of the transfer of trust interest. Accordingly, we reverse the trial court's judgment in its entirety.

I.

**ISSUES**

The defendants entreat us to consider:

(1)    whether the trial court erred in refusing to consider the testamentary intent of James D. Delino, Sr. in creating the Jake Delino Trust and in regard to his disposition of the principal interest of the deceased income beneficiary in the corpus of the trust;

(2)    what was the testamentary intent of James D. Delino, Sr. in instructing in his will that the principal interest in the corpus of the Jake Delino

Trust attributable to the deceased beneficiary would go to the deceased beneficiary's "legal heirs";

(3)     whether the trial court erred in its determination of the meaning of the phrase "legal heirs" in James D. Delino, Sr.'s last will and testament;

(4)     in view of the above issues, whether the trial court erred in annulling the Transfer of Trust Interest;

(5)     whether the trial court erred in holding that Keffer Thomas Delino, II's interest in the Jake Delino Trust was an asset of his succession that passed under his will to his universal legatee, Brent Andrew Griffin; and

(6)     whether the trial court erred in its finding that there was no language in James Delino, Sr.'s will signifying that he wanted to preclude his sons from leaving their estates at death to a third party (a non-Delino)?

II.

## FACTS AND PROCEDURAL HISTORY

On May 17, 1989, James executed his last will and testament in which he provided that, upon his death, the vast majority of his estate would go into a spendthrift trust. He named as income beneficiaries his two sons, Keffer and Jimmy. The testament further provided that, upon the death of the first income beneficiary, the deceased beneficiary's interest in the Trust would terminate, and the Trust would continue as to the surviving income beneficiary until his death. Upon the termination of the Trust as to any interest, James directed the trustee to distribute the proportionate part of the trust corpus to the "legal heirs" of the deceased income beneficiary. In relevant part, the testament provided:

If it has not already been done, at my death I establish a trust to be called the Jake Delino Trust. I appoint my sister, Alfreda Delino as Trustee to serve

2

until her death or incapacity. When that occurs, I appoint my wife, Carole A. Hoffpauir, as Trustee.

I give and bequeath all of the balance of my separate property to the Jake Delino Trust. Further, I give the naked ownership of my interest in all community property to the Jake Delino Trust, together with the naked ownership of my interest in the residence and lot where my mother is presently residing[.]

The following provisions will apply to the Jake Delino Trust:

1. On December 15 of each year, all income produced by the Jake Delino Trust will be distributed equally to Keffer Thomas Delino, II and James Delino, Jr., my two sons. This distribution will be made after all taxes and expenses have been deducted from the income.

2. This trust shall terminate as to the interest of each beneficiary of income upon the death of each beneficiary of income, and continue as to the beneficiary of income who survives until his death.

3. Upon termination of the trust as to any interest, the trustee shall distribute the proportionate part of the corpus of the trust to the legal heirs of the income beneficiary who has passed away.

4. This shall be a "spend thrift trust", that is, voluntary and involuntary alienation by a beneficiary of his interest shall be prohibited to the maximum extent permitted by Louisiana Law.

James died on January 29, 1990. He was survived by his wife, Carole, and his two sons. Upon his death, the Trust was created, and the property transferred to the trustee. Thereafter, as lifetime income beneficiaries, Keffer and Jimmy received income from the Trust.

Keffer died on April 20, 2012, leaving no descendants and no surviving spouse. In his last will and testament, Keffer bequeathed his entire estate to his companion, Brent Andrew Griffin (Brent).

On June 6, 2013, Carole, as trustee, along with Jimmy executed an instrument entitled "Transfer of Trust Interest," which was then recorded in the Conveyance Records of the Parish of Vermillion. The transfer conveyed a one-half interest in the corpus of the Trust to Jimmy subject to Carole's lifetime usufruct. On June 4, 2014, Brent, as the testamentary executor of Keffer's succession, instituted the instant nullity action. Brent asserted that he was Keffer's "legal heir" and, therefore, the transfer of the immovable property to Jimmy and Carole should be annulled and the property included in Keffer's succession.[1]

This matter was originally tried on October 12, 2015, and the trial court rendered judgment on December 28, 2015, setting aside the transfer and awarding judicial interest to the plaintiff. In his reasons, the trial court found that Brent, as Keffer's universal legatee, was "the only legal heir to inherit the estate of Keffer Delino, II." The defendants moved for a new trial and, on April 29, 2016, the trial court found that the award of judicial interest, which was not prayed for or provided by law, was clearly contrary to the law and the evidence. The trial court then granted a new trial as to all issues.

On March 1, 2017, the trial court, without allowing the introduction of any evidence, "reinstitute[d]" his original ruling of December 28, 2015. Defendants requested the opportunity to proffer witnesses and exhibits relative to testamentary intent. The trial court ordered the evidence be taken by depositions, which were conducted on April 3, 2017, and are now part of the record on appeal. On June 15, 2017, the trial court rendered judgment, annulling the transfer and

---

[1]Brent is now deceased, having left his entire estate to a non-profit trust—The Brent Griffin Pet Trust—"to be formed to care for his dog, Bouvier, and to be used to benefit and care for abandoned and neglected dogs and cats in the Abbeville, Louisiana area." Debra Garrot, the trustee of the non-profit pet trust, now serves as representative of both Keffer's and Brent's successions.

awarding $50,000 in compensatory damages plus legal interest from September 16, 2016.

III.

**STANDARD OF REVIEW**

An appellate court reviews questions of fact under the manifest error-clearly wrong standard of review. *In re Succession of Bernat*, 11-368 (La.App. 3 Cir. 11/2/11), 76 So.3d 1287, *writ denied*, 12-263 (La. 3/30/12), 85 So.3d 122. However, when a trial court merely reviews and interprets testamentary language without the introduction of evidence, its interpretation is a question of law, which we review de novo. *Succession of Leavines*, 15-923 (La.App. 3 Cir. 3/2/16), 215 So.2d 800, *writ denied*, 16-0865 (La. 9/6/16), 205 So.3d 918.

IV.

**LAW AND DISCUSSION**

A trust is "the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another." La.R.S. 9:1731 (1990). The person "to whom title to the trust property is transferred" is the trustee. La.R.S. 9:1781 (1990). A trustee administers the property as a fiduciary of the "person for whose benefit the trust was created[,]" known as the beneficiary. La.R.S. 9:1801 (1990). There may be beneficiaries "as to income or principal or both." La.R.S. 9:1805 (1990). The income beneficiary is the one "to whom income is payable," whereas a principal beneficiary is "entitled to principal" or the corpus of the trust. La.R.S. 9:1725(2) & (4) (1990). While a lifetime "interest in income terminates upon the death of the designated beneficiary," the interest of a principal beneficiary, upon his death, "vests in his

5

heir or legatees, subject to the trust" and the laws regulating successions and donations. La.R.S. 9:1964 & 1972 (1990).

Most importantly, though, the settlor is the "person who creates a trust." La.R.S. 9:1761 (1990). "A trust or a disposition in trust may be made subject to any conditions not forbidden in [the Louisiana Trust] Code and not against public order or good morals." La.R.S. 9:1736 (1990). Moreover, "[a] settlor may dispose of property in trust to the same extent that he may dispose of that property free of trust and to any other extent authorized by this Code." La.R.S. 9:1737 (1990). The settlor can also restrict, to the full extent permitted by law, the "alienation by a beneficiary of an interest in income or principal" through the creation of a spendthrift trust. La.R.S. 9:1725(7) (1990). Testamentary trusts, like the one at issue herein, "may be created only in one of the forms prescribed by the laws regulating donations mortis causa." La.R.S. 9:1751 (1990).

"In construing a trust, the settlor's intention controls and is to be ascertained and given effect, unless opposed to law or public policy." *Richards v. Richards*, 408 So.2d 1209, 1211 (La.1981).

> [T]he words used in a trust instrument must be construed in that sense which will best effectuate the intent of the creator or settlor of the trust and, if possible, to avoid the destruction of the trust. In the determination of the settlor's intent, the words used will be taken in their usual, ordinary, or natural meaning in the absence of anything in the instrument under consideration to deflect from that meaning.

La.R.S. 9:1753 (1990), Comments—Prof. Leonard Oppenheim (quoting 90 C.J.S. § 161h). "A trust instrument shall be given an interpretation that will sustain the effectiveness of its provisions if the trust instrument is susceptible of such an interpretation." La.R.S. 9:1753. As with any testamentary disposition,

6

effect must be given to every part of the will as far as the law will permit. "Where it is a question of the choice between two interpretations, one of which will effectuate, and the other will defeat, a testator's intention, the court will carry out the intention of the testator." Additionally, Louisiana case law has recognized that in the interpretation of wills, the first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. "The testatrix is not supposed to be propounding riddles but rather to be conveying her ideas to the best of her ability so as to be correctly understood at first view."

*In re Succession of Helms*, 01-1357, pp. 2-3 (La.App. 3 Cir. 3/6/02), 810 So.2d 1265, 1267-68 (citations omitted).

All trusts "shall be governed by the laws in effect at the time of their creation." La.R.S. 9:2252 (1990). "A testamentary trust is created at the moment of the settlor's death." La.R.S. 9:1821 (1990). Because James died in 1990, his Trust is governed by the law in effect at that time. In 1990, the Louisiana Trust Code directed that its provisions be liberally construed "in favor of freedom of disposition" and in pari materia with the general provisions of our law, except when a specific provision exempted application of the more general rule:

> The provisions of this Code shall be accorded a liberal construction in favor of freedom of disposition. Whenever this Code is silent, resort shall be had to the Civil Code or other laws, but neither the Civil Code nor any other law shall be invoked to defeat a disposition sanctioned expressly or impliedly by this Code.

La.R.S. 9:1724 (1990).

The pivotal issue in this case is the proper interpretation of the provisions of the testamentary trust regarding the distribution of property upon the death of one of the income beneficiaries. To resolve this issue, we must determine the meaning of the term "legal heir" as that term was understood under the law in effect in 1990 so to ascertain the intent of the settlor, which is paramount.

7

Turning now to the provisions of the testament, it is not disputed that both Jimmy and Keffer were the named income beneficiaries. No one contests that the "proportionate part" of the property attributable to Keffer's root was to be distributed upon his death to his legal heirs. The dispute in the present matter arises over the proper interpretation of that term in light of the fact that Keffer died testate.

In rendering its decision, the trial court focused upon Keffer's testamentary intent. However, the property was transferred to the trustee by James. As the settlor, it is *James's* testamentary intent that ultimately controls the disposition of his property. As contemplated by the Trust Code, James explicitly provided that the respective interests of both his income beneficiaries would terminate upon their deaths. Therefore, upon his death, Keffer's interest in the Trust terminated, both by law and testament. In this manner, Keffer had no inheritable interest in the Trust to bequeath. And his naming Brent as his universal legatee is of no moment to the determination of the issue herein because the property was never part of Keffer's patrimony or his succession.

Rather, James directed the trustee to distribute the property attributable to Keffer's root to Keffer's "legal heirs." At the time of the Trust's creation, the Civil Code defined the term "legal heir" as one "who is called by law to the inheritance." La.Civ.Code art. 940 (1990). Moreover, caselaw had long held, in accordance with our civilian tradition, that "legal heirs" are "heirs of the blood." *Succession of Justus*, 44 La.Ann. 721, 723, 11 So. 95, 95 (1892). Jurisprudence further acknowledged the distinction, codified in our Civil Code since its inception, between testamentary heirs or legatees and legal heirs or heirs of the blood based upon the nature of successions:

> According to our Civil Code, there are three sorts of successions: (1) The testamentary succession, or that which results from the institution of an heir contained in a testament executed by the deceased; (2) the legal succession, or that which the law has established in favor of the nearest relation of the deceased, and (3) the irregular succession, or that which is established in favor of certain persons, or of the State in default of heirs either legal or instituted by testament. Arts. 875, 876, 877, 878.
>
> The kinds of heirs that correspond to these three species of successions are described in Article 879 as: (1) Testamentary or instituted heirs; (2) legal heirs or heirs of the blood, and (3) irregular heirs.

*Succession of Wesley*, 224 La. 182, 188-89, 69 So.2d 8, 10-11 (1953).

Through the revision of our Civil Code in 1981, the legislature, under the recommendation of the Louisiana Law Institute, amended the law to recognize only two types of successions: (1) the testate succession that "results from the will of the deceased," La.Civ.Code art. 874 (1990); and (2) the intestate succession that "results from provisions of law in favor of certain persons," La.Civ.Code art. 875 (1990). Under the revision, only two corresponding types of successors were recognized: "Testate successors, also called legatees. Intestate successors, also called heirs." La.Civ.Code art. 876 (1990).

With this understanding of the relevant law, it is clear that the term "legal heir" was, in 1990, a codified, as well as jurisprudentially recognized, reference to heirs of the blood and of the nearest relation to the deceased that were called by our law to inherit. Accordingly, we find that, at the time of the Trust's creation, the term "legal heir" was a term of art or legal shorthand, generally understood as referring to the class of successors "called by law" because of their kinship resulting from a blood relationship to a decedent. We further find that, through his use of this term, the settlor clearly intended for his property to be

distributed to those persons called by law to inherit the property attributable to his sons' proportionate roots, *i.e.*, their heirs of the blood of nearest relation.

Under the law in effect in 1990,

> If the deceased leaves no descendants but is survived by a father, mother, or both, and by a brother or sister, or both, or descendants from them, the brothers and sisters or their descendants succeed to the separate property of the deceased subject to a usufruct in favor of the surviving parent or parents.

La.Civ.Code art. 891 (1990). Pursuant to this provision, Keffer's legal heirs, as would have been contemplated by the settlor at the time of the Trust's creation, were, in fact and law, his brother and his mother. At the time of his death and the transfer of interest, Keffer's legal heirs were still, under the current law, his brother and his mother. La.Civ.Code art. 891.[2]

Moreover, we note that to interpret the term "legal heir" in the manner in which the trial court did would effectuate a power of appointment prohibited under the law in 1990. Specifically, allowing Keffer's testamentary disposition to control would run afoul of the provisions of La.Civ.Code art. 1573 (1990), which provided, in pertinent part:

> The custom of willing by testament, by the intervention of a commissary or attorney in fact, is abolished.

> Thus the institution of heir and all other testamentary dispositions committed to the choice of a third person are null, even should that choice have been limited to a certain number of persons designated by the testator.

Under the trial court's interpretation, the settlor would have effectively granted to Keffer, a third party, the choice as to the disposition of the settlor's property. As

---

[2]Louisiana Civil Code Article 891 was amended in 2004; but the amendment did not affect a change in the law on this particular issue, and the quoted language was retained verbatim.

such, the testamentary trust provision would have been contra bonos mores and, thus, not enforceable under either the Trust Code or the Civil Code. *See* La.R.S. 9:1736; La.Civ.Code art. 1573.

Because the transfer of trust interest at issue herein clearly comports with the intent of the settlor, as well as the law, we find the trial court legally erred in nullifying the transfer.[3] Accordingly, we reverse the trial court's judgment in its entirety.

V.

## **<u>CONCLUSION</u>**

For the foregoing reasons, we reverse the judgment of the trial court.

Costs of this appeal are assessed to the Plaintiff/Appellee, the succession representative of the Succession of Keffer Thomas Delino, II.

**REVERSED.**

---

[3]This holding renders all remaining assignments of error moot.